# In the United States Court of Federal Claims

|  |  |
|---|---|
| **FRANCIE A. HENLEY**, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> **THE UNITED STATES,** <br><br> *Defendant*. | No. 22-1716 <br> (Filed: November 7, 2024) |

*Michael J. Smith*, *Steven M. Wald*, *Thomas S. Stewart*, *Reed W. Ripley*, Stewart, Wald & Smith, LLC, St. Louis, Missouri and Kansas City, for Plaintiffs.

*Daniel Pinkston*, Senior Trial Attorney, Denver, Colorado, *Todd Kim*, Assistant Attorney General, Environment & Natural Resources Division, Washington, D.C., United States Department of Justice, for Defendant.

## OPINION AND ORDER

**HADJI,** *Judge*.

Plaintiffs seek just compensation under the Fifth Amendment for the Government's alleged appropriation of their land for recreational trail use under the National Trail Systems Act, 16 U.S.C. §§ 1241-51 (Trails Act). *See generally* Second Am. Compl., ECF 11. The core dispute is whether Plaintiffs have a property interest in the disputed land. Plaintiffs allege that their predecessors in title, through certain "source deeds" dating from the late nineteenth and early twentieth centuries, granted the previous railroad operator easements across their property to build a railway corridor, and those easements terminated when the land ceased to be used for railroad purposes. Pls.' Mot. Summ. J. at 1, 13-15, 18, ECF 30. In contrast, the Government argues that the source deeds relied on by Plaintiffs conveyed fee simple title to the original railroad operator such that Plaintiffs do not have any property interest in the land at issue. Def.'s Mem. at 2, ECF 34.

Before the Court is Plaintiffs' Partial Motion for Summary Judgment (ECF 30) and the Government's Cross-Motion for Partial Summary Judgment (ECF 33). For the following reasons, Plaintiffs' Partial Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and the Government's Cross-Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

This action is brought by Plaintiffs Francie A. Henley, Justin & Angela Lakso, John Elmar Wagner, Thomas & Pamela Heitzmann, Neun Family Irrevocable Trust, Properties & Holdings by Abigale, LLC, Jeffrey Titter, and Believers Bible Chapel.[1] Second Am. Complaint ¶¶ 1-11. The parties stipulate that Plaintiffs own various parcels of land adjacent to a railroad line in Franklin County, Missouri. ECF 29. The railroad line is currently owned by V and S Railway, LLC (V&S). Pls. Ex. A at 2, ECF 30-1. Plaintiffs allege that their predecessors in title, through certain "source deeds" from approximately 120 years ago, granted St. Louis, Kansas City & Colorado Railroad Co. (the Original Railroad) an easement across their property to build a railway corridor. Pls.' Mot. Summ. J. at 1-2, ECF 30.

In October 2022, V&S filed a "Notice of Exemption" with the Surface Transportation Board (STB), seeking exemption authority for the abandonment of a section of rail line between Union, Missouri and Beaufort, Missouri (the Corridor). Pls. Ex. A at 2, ECF 30-1. Pursuant to the Trails Act, 16 U.S.C. § 1247(d), the Missouri Department of Natural Resources requested issuance of a Notice of Interim Trail Use or Abandonment (NITU), effective for one year, so that it could negotiate with V&S for an interim trail use agreement pursuant to which the Corridor could be developed as a trail. *Id*. On November 18, 2022, the STB issued a NITU, Pls. Ex. D, ECF 30-4, which was later extended through November 18, 2024. Pls. Ex. F, ECF 30-6. Negotiations continue over an interim trail use agreement.[2]

The parties agree on the identification of the applicable source deeds. ECF 29. Specifically, the parties do not dispute that: (1) Plaintiffs owned the property identified in the table below at the time of the NITU; (2) the tax parcels listed adjoin the Corridor described in the NITU; and (3) the source deeds identified correspond to at least a portion of the railroad corridor adjacent to Plaintiffs' tax parcels listed here:

| Plaintiff(s) | Franklin County Parcel Number | Source Deed Grantor Name (Book/Page) | Pls.' Exhibit Nos. |
|---|---|---|---|
| Francie A. Henley | 17-9-30.2-0-000-003.000 | G.A. Evert (53/276) | I-1 |
| Justin & Angela Lakso | 23-2-04.0-0-000-009.100 | J. Crowe (30/498) | I-2 |
| John Elmar Wagner | 23-2-04.0-0-000-009.000 | J. Crowe (30/498) | I-2 |

---

[1] Jeffrey Titter and Believers Bible Chapel are not movants as to this motion.

[2] Despite the ongoing negotiations, the parties do not dispute that Plaintiffs' claims are ripe. It is well settled that a takings claim accrues upon the issuance of a NITU. *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006). Accrual does not depend on the execution of a trail use agreement or the trail operator taking physical possession of the right-of-way. *Id.*

| Thomas & Pamela Heitzmann | 23-1-02.0-0-000-010.00 | C. Siese (53/247) | I-3 |
| Neun Family Irrevocable Trust | 23-3-05.0-0-000-016.000 | Spradling (30/514) Osborne (53/282) | I-4 I-5 |
| Properties & Holdings by Abigale, LLC | 17-9-30.2-0-000-010.000 | A. Fink (53/250) | I-6 |

ECF 29.

Plaintiffs filed this action on November 21, 2022, alleging that the NITU resulted in a taking of their property. ECF 1. Plaintiffs amended their Complaint on January 5, 2023, ECF 5, and again on April 6, 2023. ECF 11. Although trail use negotiations remained ongoing at the close of discovery, the parties suggested that the most efficient course forward would be to brief the issue of what interests were conveyed by the source deeds. *See id.* Accordingly, Plaintiffs filed their Motion for Partial Summary Judgment on January 5, 2024, seeking summary judgment on the "threshold liability issues" of whether Plaintiffs have a reversionary interest in the land within the railroad right of way subject to the NITU, and whether recreational trail use exceeds the scope of the easements. ECF 30 at 6. The Government filed its Motion for Partial Summary Judgment on February 9, 2024, opposing Plaintiff's entitlement on these threshold liability issues. ECF 33. Additionally, an Amicus Brief was filed on behalf of five landowners who are plaintiffs in the indirectly related matter, *Bacon et al. v. United States*, Case No. 22-1724, which is pending before the undersigned. ECF 40. The *Bacon* plaintiffs own property on the same rail line at issue in this matter and acquired that property by virtue of three of the source deeds under consideration here. *Id.* at 2.

## **LEGAL STANDARD**

According to the Rules of the United States Court of Federal Claims, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).[3] "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

The Supreme Court has instructed that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.* at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

---

[3] Court of Federal Claims Rule 56(a) is the same as Federal Rule of Civil Procedure 56(a). *Compare* RCFC 56(a) *with* Fed. R. Civ. P. 56(a).

A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for [the fact-finder] to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland Power*, 16 F.3d at 1202.

## DISCUSSION

To establish a Fifth Amendment taking, a plaintiff must possess a protectable property interest in the subject of the taking. *Palmyra Pac. Seafoods, L.L.C. v. United States,* 561 F.3d 1361, 1364 (Fed. Cir. 2009). In determining whether a landowner has met this requirement in Trails Act cases, the Court considers the following three factors:

> (1) who owned the strips of land involved, specifically did the Railroad… acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault v. United States* (*Preseault II*), 100 F.3d 1525, 1533 (Fed. Cir. 1996).

Plaintiffs seek summary judgment as to the first two *Preseault II* factors, asking the Court to find as a matter of law that V&S obtained easements in the land at issue and that recreational trail use and railbanking exceed the scope of those easements. Pls.' Mot. Summ. J. at 1, ECF 30. For its part, the Government only disputes the first issue, stating: "If the Court holds that some or all of the interests conveyed through the source deeds were easements, Defendant, for the purposes of this case only, does not contest that interim trail use and railbanking are outside the scope of those easements." Def.'s Mem. at 30, ECF 34.

Thus, the sole issue here is whether the Original Railroad, and subsequently V&S, obtained easements or fee simple title in the land subject to the NITU. To ascertain Plaintiffs' interest in the land at issue, the Court looks to the six source deeds conveyed to the Original Railroad by Plaintiffs' predecessors in title. If the source deeds underlying the Plaintiffs' present ownership interests conveyed fee simple title to the Original Railroad, then Plaintiffs no longer own a property interest in the Corridor that could have been

affected by the NITU. *See Preseault II*, 100 F.3d at 1533. The relevant deeds can be grouped into two categories: (1) deeds containing a reference to "right of way" (Evert, Siese, Fink, Osborne); and (2) deeds that were conveyed for nominal amounts (Crowe, Spradling).

### I.   Group One: The Evert, Siese, Fink, and Osborn Source Deeds

Each deed in the first group contains language of a "right of way" or "right-of-way." The key question is whether this language limits the conveyance to an easement. The Evert source deed is illustrative of this category and conveys to the Original Railroad the following:

> A strip of land one hundred (100) feet in width, having a uniform width of fifty (50) feet on each side of the center line of the Railroad of said Company as the same is now located, described and marked out on and across the following described tract or parcel of land, to wit: The North end of Lot No. two (2) of the southwest quarter of (1/4) of Section Thirty (30) Township forty three (43) North Range One (1) west, Containing twelve (12) acres. Also an additional strip of land fifty (50) feet wide on each side of the above described Right of Way, and adjacent and parallel thereto; to be measured from a point where the said located line crosses the south line of the above described tract in a northeasterly direction for a distance of 275 feet; the same being an additional right of way.

Pls. Ex. I-1 at 4, ECF 30-10. The other deeds in this group are nearly identical. Pls. Ex. I-3, ECF 30-12; Pls. Ex. I-5, ECF 30-14; Pls. Ex. I-6, ECF 30-15. Each deed includes a primary conveyance of a strip of land centered on the railroad line and a secondary conveyance that refers to the strip of land in the primary conveyance as "right of way" or "right-of-way." The Siese deed grants "an additional strip of land twenty-five (25) feet wide on each side of the above described Right-of way, and adjacent and parallel" to the primary conveyance. Pls. Ex. I-3 at 4, ECF 30-12. The Fink deed contains similar language, with the secondary conveyance described as "an additional strip of land fifty (50) feet wide on each side of the above described right of way." Pls. Ex. I-6 at 4, ECF 30-15. The Osborn deed describes the secondary conveyance as including fifty feet south and 100 feet north of the "above described right of way." Pls. Ex. I-5 at 4, ECF 30-15.

Each source deed also includes a broad habendum clause conveying the estate "to Have And To Hold the same, together with all the rights, immunities, privileges and appurtenances as the same belonging unto" the grantee "and to its successors and assigns forever." *See, e.g.*, Pls. Ex. I-1 at 4, ECF 30-10. Finally, each deed recites significant consideration for the time (approximately 120 years ago). $160 was paid for the Evert deed,

5

$375 for Seise, $350 for Fink, and $12 for Osborn.[4] *See, e.g.*, Pls. Ex. I-1 at 4, ECF 30-10; Pls. Ex. I-3 at 4, ECF 30-12; Pls. Ex. I-5 at 4, ECF 30-15; Pls. Ex. I-6 at 4, ECF 30-14.

To aid its interpretation of these deeds, the Court applies the law of the state in which the property is located. *See Preseault II*, 100 F.3d at 1540. Because the rail line at issue is in Missouri, the Court applies Missouri law. *Id.* Under Missouri law, the cardinal method for deed interpretation is "to ascertain the intention of the parties and to give that intention effect." *Hinshaw v. M-C-M Props., LLC*, 450 S.W.3d 823, 827 (Mo. Ct. App. 2014). The courts of Missouri have consistently reviewed the following three factors to determine whether a deed to a railroad passes fee title or merely an easement: (1) whether the deed includes language conveying a "right of way;" (2) the amount of consideration; and (3) language in the deed limiting the use of the land for railroad purposes. *Moore v. Mo. Friends of Wabash Trace Nature Trail, Inc.* (*Danny Moore*), 991 S.W.2d 681, 685-86 (Mo. Ct. App. 1999).

Here, the parties do not dispute that the last two factors favor a fee simple conveyance. Each deed recites significant consideration for the time and contains no express language limiting the use of the land for railroad purposes. Nevertheless, Plaintiffs argue that the first factor—the inclusion of "right of way" language—is sufficient to limit the interest conveyed. Pls.' Mot. Summ. J. at 14, ECF 30.

Under Missouri law, "right of way" language may indicate that the grantor intended to convey a right of passage rather than fee simple absolute. *See City of Columbia v. Baurichter*, 729 S.W.2d 475, 479 (Mo. Ct. App. 1987). However, Missouri courts do not automatically construe "right of way" language to effect a limitation on a deed. *Schuermann Enter., Inc. v. St. Louis*, 436 S.W.2d 666, 669 (Mo. 1969). According to the Missouri Supreme Court, the phrase "right of way" has "been accorded two meanings in railroad parlance—the strip of land upon which the tract laid—and the legal right to use such strip." *Id.* "[W]here the interest conveyed is limited to right of way or for right of way the estate conveyed is an easement only." *Id.*

Here, it does not appear that the use of "right of way" language in the first group of deeds was intended to limit the nature of the interest conveyed. In the Siese deed, for example, the phrase "right of way" is wholly absent from the granting clause of the primary conveyance—which is described in fee simple terms as a "strip of land" and "100-foot-wide parcel." Pls. Ex. I-3 at 4, ECF 30-12. Instead, the phrase appears alongside the granting clause of the secondary conveyance and only in the context of locating the position of the secondary conveyance in relation to the primary conveyance. *Id.* The same goes for the Evert, Fink, and Osborn deeds. For each deed, the phrase "right of way" is used merely as a description of the location of the land conveyed and, therefore, is not indicative of an easement or any other limitation on the conveyances.

---

[4] Adjusting for inflation based on the Consumer Price Index from 1913, the earliest year such data is available, these amounts approximately equal: $5,139 for the Evert deed, $12,045 for Seise, $11,242 for Fink, and $385 for Osborn. *See* https://data.bls.gov/cgi-bin/cpicalc.pl (last visited Oct. 24, 2024).

The Court's decision in *Hubbert v. United States*, 58 Fed. Cl. 613 (2003) (Bruggink, J.), supports this conclusion. *Hubbert* construed a source deed which recited consideration of seventy-five dollars. *Id.* at 615. The deed in question included language stating that the grantor was conveying "[a] strip of Land One hundred feet wide over and through the [described section] said strip of Land being fifty feet on each side of the center line of the Springfield and Northern Railway as the same is now Located and partly constructed over and through said land, the same being the right of way for said [Railroad]." *Id.* The court found that the deed conveyed a fee simple interest to the railroad:

> The use of the "right of way" language in the deed is simply descriptive and not intended to limit the interest conveyed. The Missouri Supreme Court has recognized that the phrase "right of way" has "been accorded two meanings in railroad parlance – the strip of land upon which the tract laid – and the legal right to use such strip." *Schuermann Enter., Inc. v. St. Louis*, 436 S.W.2d 666, 669 (Mo.1969).
>
> The right-of-way language here appears at the end of the body of the document, textually removed from the granting clauses. The granting clauses themselves express the conveyance of "lots, tracts or parcels of Land" and "a strip of land." The location of the "right of way" language therefore describes the location of the strip of land and is not a limitation on the interest conveyed.

*Id.* at 615-16.

The same is true here. In each deed, the "right of way" language is textually removed from the primary conveyance, which itself expresses the conveyance in fee simple terms as a "strip of land one hundred (100) feet in width." The belated use of "right of way" does not indicate an intention to convey an easement, and any faint signal to that effect is more than drowned out by the abundance of fee simple language both before ("grant, bargain and sell") and after ("To Have and to Hold the same…"). *See Nixon v. Franklin*, 289 S.W.2d 82, 88 (Mo. 1956) (holding that the words "grant, bargain and sell" are evidence of a conveyance in fee simple); *Bayless v. Gonz*, 684 S.W.2d 512, 513 (Mo. Ct. App. 1984) (holding that language stating "to have and to hold the same together with all singular rights, immunities, privileges and appurtenances to the same" conveys a fee simple interest).

Resisting this reasoning, Plaintiffs ask this Court to disregard *Hubbert* and instead follow *Abbott v. United States*, 162 Fed. Cl. 445 (2022) (Davis, J.). Pls.' Mot. Summ. J. at 14-18, ECF 30. In *Abbott*, the Court interpreted deeds with similar primary and secondary conveyances to those at issue here and found that they conveyed easements under Missouri law. The Court summarized those deeds as follows:

7

> [E]ach representative deed contains a primary conveyance of a strip of land 100 feet in width, and a secondary conveyance for a 25-foot-wide strip of land on each side of and running parallel to the land described in the primary conveyance. ECF No. 162-2 at 21, 24, 27. Each of the secondary conveyances is "for extra right of way," followed by a description of its location. *Id.* (emphasis added). The antecedent "for" clearly indicates that "right of way" limits the interest acquired in the secondary conveyance, and is not merely a description of the land conveyed or its location. This language is sufficient to show that the deeds' secondary conveyances transferred an easement under Missouri law. *See G.M. Morris*, 631 S.W.2d at 88 (citing *Schuermann*, 436 S.W.2d at 669).

*Abbott*, 162 Fed. Cl. at 461. However, those deeds differ from the ones presently at issue. In interpreting the *Abbott* deeds, the Court placed particular emphasis on the word "for" preceding the "right of way" language in each deed. *Id.* This makes sense because the word "for" is used as a function word to indicate purpose. *For*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003). By contrast, none of the deeds in the instant case specify that the primary or secondary conveyances are "for" right of way. *See, e.g.*, Pls. Ex. I-1 at 4, ECF 30-10. Rather, each deed refers to the primary conveyance as the "above described right of way" in the context of locating the position of the secondary conveyance relative to the primary one. *Id.*

In sum, the Evert, Siese, Fink, and Osborn source deeds contain all the indications of a fee simple conveyance. Those deeds all recite significant consideration for the time, contain no language limiting the use of the land for railroad purposes, and employ the phrase "right of way" merely as a location descriptor. *Danny Moore*, 991 S.W.2d at 685-86. The Court concludes that those deeds conveyed fee simple title to the Original Railroad and, therefore, Plaintiffs fail the first prong of *Preseault* with respect to those deeds. Accordingly, the claims of Plaintiffs Francie A. Henley, Thomas & Pamela Heitzmann, Properties & Holdings by Abigale, LLC, which are underlain by the Evert, Siese, and Fink deeds, and that portion of the claim of the Neun Family Irrevocable Trust underlain by the Osborne source deed must be dismissed. The Court grants the Government's Motion for Partial Summary Judgment and denies Plaintiffs' Motion for Partial Summary Judgment as to those claims.

### II.     Group Two: The Crowe and Spradling Source Deeds

The Court turns to the second group of deeds, namely the J. Crowe and Spradling source deeds. Unlike the first group, these deeds do not contain any "right of way" language. Rather, the pivotal characteristic of these deeds is that they were each conveyed for consideration of "one dollar and the building, maintaining, and operating of a Railroad." Pls. Ex. I-1 at 4, ECF 30-11; Pls. Ex. I-2 at 4, ECF 30-13. Plaintiffs argue that the apparent lack of valuable consideration renders each conveyance a voluntary grant (and therefore

an easement) under Missouri law. Pls.' Mot. Summ. J. at 19-20, ECF 30. By contrast, the Government argues that the added condition of "building, maintaining, and operating of a railroad" constitutes valuable, non-monetary consideration under Missouri law sufficient to convey fee simple title. Def.'s Mem. at 25, ECF 34.

Mo. Rev. Stat. § 388.210(2) (2022), which was in effect when the deeds in question were created, gives railroad companies the ability to take and hold voluntary grants. Specifically, the statute provides that railroads may:

> [T]ake and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroads; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only[.][5]

"The term 'voluntary' grant has been construed to mean a conveyance without valuable consideration." *Danny Moore*, 991 S.W.2d at 685. A sum of one dollar is considered nominal consideration, not valuable consideration, under the law of conveyancing. *Brown v. Weare*, 152 S.W.2d 649, 653 (1941). The exchange of mere nominal consideration, even if paired with unconditional language indicative of a fee simple conveyance, results only in a voluntary grant to the railroad. *See, e.g*, *G.M. Morris Boat Co., Inc. v. Bishop*, 631 S.W.2d 84, 88 (Mo. Ct. App. 1982); *Moore v. United States*, 58 Fed. Cl. 134, 137 (2003). If the conveyance to the railroad is determined to be a voluntary grant, "the effect of the statute [is] that the railroad acquired only an easement, no matter what interest the deed purported to convey." *Danny Moore*, 991 S.W.2d at 685.

Further, as the Government maintains, valuable consideration may be non-monetary in nature. For example, in *Bagby v. Missouri-Kansas-Texas R. Co.*, the Missouri Supreme Court found valuable consideration where land was conveyed to a railroad on the condition that the railroad build its car and coach shops there. 171 S.W.2d 673, 676 (1943). The Court also recognized as valuable consideration "benefits accruing to property owners from the location of public buildings, military headquarters, or manufacturing plants or other private buildings." *Id.* (citing 17 C.J.S., *Contracts* § 84).

However, no Missouri court has found valuable consideration where land was conveyed, as here, for the consideration of one dollar and "the building, maintaining, and operating of a railroad." In fact, the only Missouri court to directly address the question held the opposite. In *Danny Moore*, the Missouri Court of Appeals, Western District, found that a deed stating consideration of "one dollar and the building[,] maintaining[,] and operating of a railroad by the [railroad], its successors and assigns" amounted to "merely nominal" consideration. 991 S.W.2d at 687.

This Court recently applied *Danny Moore* in in its decision in *Abbott*, 162 Fed. Cl. at 461. Based on the clear holding in *Danny Moore*, Mo. Rev. Stat. § 388.210(2), along

---

[5] Mo. Rev. Stat. § 1035 (1899).

with the "absence of any conflicting, on-point Missouri case law," this Court concluded that "'one dollar and the building, maintaining, and operating of a railroad' does not constitute valuable consideration" under Missouri law. *Abbott*, 162 Fed. Cl. at 461 (citing *Danny Moore*, 991 S.W.2d at 685).

This Court explained its reasoning in *Abbott* in two additional ways, which are applicable here as well. First, unlike the construction of a building such as a shop or depot, the mere construction and operation of a railroad right of way does not confer any clear tangible benefits to nearby property owners. In this regard, *Bagby* is not on point as this Court explained in *Abbott.* "The conveyance at issue there was part of an arrangement between a city in Missouri and a railroad company" and "[t]he city enticed the railroad to locate its car and coach shops in its town by subsidizing the building of railway company shops with $100,000." *Abbott*, 162 Fed. Cl. at 460 (citing *Bagby*, 171 S.W.2d at 674). The benefits to the city were readily apparent in the form of "employment opportunities for local citizens resulting from the building and operating" of the shops. *Id.* (citing *Bagby*, 171 S.W.2d at 676). This Court concluded that "[w]hile the community benefits in *Bagby* are apparent, it is less obvious what tangible benefits are conferred upon an individual landowner … by a railroad right of way running across his/her land … nor does Defendant make such a showing." *Id.*

Second, construing the "building, maintaining, and operating of a railroad" as valuable consideration would essentially render Mo. Rev. Stat. § 388.210(2) all but useless. As discussed, that statute gives railroads the authority to accept voluntary grants of land (*i.e.*, easements) "to aid in the construction, maintenance and accommodation of its railroads." The fact "[t]hat the parties clearly shared an intent that the Railroad use the land to build, maintain, and operate (*i.e.*, construct, maintain, and accommodate) the rail line is what, in part, makes it an easement by operation of law." *Abbott*, 162 Fed. Cl. at 460. By contrast, the Government proposes a scheme where the very act of building, maintaining, and operating the rail line would constitute valuable consideration to the property owners and thus convert the voluntary grant into a fee simple conveyance. Such a scheme would be wholly antithetical to the operation of voluntary grants under Section 388.210(2).

Consistent with *Abbott*, which is directly supported by Missouri law, the Court finds that the Original Railroad conveyed only nominal consideration to Plaintiffs' predecessors. And, because Missouri law holds that conveyances to railroads for nominal consideration are voluntary grants (and therefore easements), *Danny Moore*, 991 S.W.2d at 685-86, the Court concludes as a matter of law that the Crowe and Spradling source deeds conveyed easements to the Original Railroad, which terminated when the Corridor ceased to be used for railroad purposes. The Court grants Plaintiffs' Motion for Partial Summary Judgment and denies the Government's Motion for Partial Summary Judgment as to the claims based on those deeds.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Partial Motion for Summary Judgment (ECF 30) is **GRANTED IN PART** and **DENIED IN PART,** and the Government's Partial Motion for Summary Judgment (ECF 33) is **GRANTED IN PART** and **DENIED IN PART**. The claims of Plaintiffs Francie A. Henley, Thomas & Pamela Heitzmann, and Properties & Holdings by Abigale, LLC, are **DISMISSED**. That portion of the claim of the Neun Family Irrevocable Trust underlain by the Osborne source deed is also **DISMISSED.** The parties **SHALL** submit a joint status report on or before **Monday, December 8, 2024,** including a proposal for further proceedings.

**IT IS SO ORDERED.**

*[Signature]*

PHILIP S. HADJI
Judge